Patricia LYNCH, et al., Plaintiffs, Appellees,

v.

Michael S. DUKAKIS, et al., Defendants, Appellants.

No. 82–1884.

United States Court of Appeals, First Circuit.

Argued June 8, 1983.

Decided Oct. 12, 1983.

**506**

Paul F. Ware, Jr., Sp. Asst. Atty. Gen., with whom Francis X. Bellotti, Atty. Gen., E. Michael Sloman and Ellen J. Janos, Asst. Attys. Gen., Paul E. Nemser, and Loretta M. Smith, Boston, Mass., were on brief, for defendants, appellants.

Pamela A. Taylor, Cambridge, Mass., with whom Jeffrey W. Kobrick, and Paula B. Mackin, Boston, Mass., were on brief, for plaintiffs, appellees.

Before McGOWAN,[*] Senior Circuit Judge, COFFIN and BREYER, Circuit Judges.

McGOWAN, Senior Circuit Judge:

This appeal from the district court raises questions regarding the adherence by the Commonwealth of Massachusetts to federal laws protecting children in foster homes. Appellants, the Governor and various subordinate officials of Massachusetts, seek to vacate, alter or amend a preliminary injunction requiring the Department of Social Services ("DSS") to provide a case plan and a periodic review of that plan to each child in foster care under the Commonwealth's supervision. In addition, the injunction prohibits DSS from assigning more than twenty "generic" cases per caseworker, and it directs DSS to assign all cases to a caseworker within 24 hours of receipt of a case by it.

On review of this injunctive order, we are asked to resolve three questions: (1) whether the district court abused its discretion by premising its action on issues not raised by the pleadings; (2) whether the district court was wrong to find that Title IV–E of the Social Security Act was enforceable in a section 1983 action; and (3) whether the district court exceeded its equitable powers in ordering the particular relief granted. We affirm the district court in all respects.

I.

This appeal arises out of a class action brought under 42 U.S.C. § 1983 (Supp. V 1981) by Patricia Lynch as the named representative of a class composed of all children under the jurisdiction of Massachusetts's foster family home care system, and all members of the children's natural and foster families.[1] Lynch filed this action in August 1978 against the Governor, the Secretary of Human Services, the Commissioner of the Department of Public Welfare ("DPW"), various subordinate DPW officials and four DPW social workers.[2] Lynch contended, *inter alia,* that Massachusetts had deprived the class of its rights under section 408(f) of Title IV–A of the Social Security Act, 42 U.S.C. § 608(f) (1976), "[b]y failing to develop and periodically review service plans" as required by the statute, Complaint ¶ 80, 1 J.A. at 53.

---

[*] Of the District of Columbia Circuit, sitting by designation.

1. On February 27, 1980, the court certified a class defined as follows:

   All children subject to protective intervention by agencies of the Commonwealth of Massachusetts under the foster family home care system, in operation pursuant to 42 U.S.C. §§ 608, 625, and regulations promulgated thereunder, and Mass.Gen.Laws. c. 119 §§ 23, 24, 51A, & 51B, and all members of the natural and foster families of such children.

   Feb. 27, 1980, Memorandum at 10, 1 Joint Appendix (J.A.) at 99.

2. By order of February 27, 1980, the district court permitted appellees to add the Commissioner of the Department of Social Services as a party defendant. Feb. 27, 1980, Order, 1 J.A. at 89.

Title IV–A of the Social Security Act, 42 U.S.C. §§ 601–615 (1976 & Supp. V 1981), establishes a cooperative federal-state program of Aid to Families with Dependent Children ("AFDC"), which includes a program applicable to children under foster care, AFDC-Foster Care ("AFDC–FC"). Federal funding is delivered to families through state agencies. The federal government reimburses a state for a substantial proportion of its costs incurred in the provision of foster family home care and child welfare services. Reimbursement, however, is only available to a state agency if it operates under a state plan that meets Title IV–A standards and regulations promulgated thereunder.[3]

Section 608 and its implementing regulations set out the federal standards that must be met by a state agency in order to receive federal AFDC–FC funds. Specifically, section 608(f) requires the state agency to develop and to review periodically a "plan" to assure that each eligible child under state supervised foster care receives proper care. Title IV–A contains no definition of a "plan" applicable in the instant case.[4] Title IV–A's foster care provisions were replaced, however, by Title IV–E on October 1, 1982. See Adoption Assistance and Child Welfare Act of 1980, Pub.L. No. 96–272, § 101(a)(2)–(3), 94 Stat. 500, 512 (the "1980 Act"). Section 675 in Title IV–E does provide such an explicit definition of a "plan." See 42 U.S.C. § 675(1) (Supp. V 1981).[5]

In August 1981, Lynch moved for a preliminary injunction on behalf of the class, seeking, inter alia, to require Massachusetts and the DSS to perform its case plan and review obligations mandated by Title IV–A. On September 20, 1982, the district court, after an evidentiary hearing, granted Lynch's motion.[6] Title IV–A, however, was to be repealed effective September 30, 1982. Consequently, in fashioning its order for preliminary relief, the district court relied on the case plan and review provisions of Title IV–E, which were added by section

**3.** Generally, the AFDC program provides aid only to children while in a family setting. No aid is expressly provided for children in foster care. Under the definition of dependent children in section 608(a), however, certain children in foster care are eligible for aid if they would have been eligible but for the fact they are in foster care. 42 U.S.C. § 608(a) (Supp. V 1981).

**4.** The implementing regulations of Title IV–A contain a definition of a "plan," but that regulation applies only to specified territories of the United States and not to the fifty states. See 45 C.F.R. § 1392.1(a); Editorial Note to 45 C.F.R. Part 1392.

**5.** Section 675(1) reads in full:

The term "case plan" means a written document which includes at least the following: A description of the type of home or institution in which a child is to be placed, including a discussion of the appropriateness of the placement and how the agency which is responsible for the child plans to carry out the voluntary placement agreement entered into or judicial determination made with respect to the child in accordance with section 672(a)(1) of this title; and a plan for assuring that the child receives proper care and that services are provided to the parents, child, and foster parents in order to improve the conditions in the parents' home, facilitate re-

turn of the child to his own home or the permanent placement of the child, and address the needs of the child while in foster care, including a discussion of the appropriateness of the services that have been provided to the child under the plan.

**6.** In the same opinion, the district court rejected Lynch's request for preliminary relief under the family reunification services provision of section 608(f). The court held that an order requiring DSS to provide reunification services would be inappropriate because section 608 was to be repealed on September 30, 1982, and the new law would not require reunification services until October 1, 1983. Sept. 20, 1982, Opinion at 34–36, 1 J.A. at 619–21.

Lynch also sought preliminary relief under the case plan and review regulation to Title IV–B, the title dealing with child welfare services. See 45 C.F.R. § 1392.40(b)(3) (1982). The district court declined to consider Lynch's claims under the regulation. Instead, the district court granted Lynch preliminary relief under 42 U.S.C. § 627(a)(2)(B) (Supp. V 1981), a Title IV–B foster care case plan and review provision added in 1980. Sept. 20, 1982, Opinion at 41–44, 54–56, 1 J.A. at 626–29, 639–41. On appeal, Massachusetts does not dispute this aspect of the district court's decision because the Commonwealth has decertified its § 627 eligibility and is not receiving § 626 funds. Brief of Appellants at 4 n. 3.

101(a)(1) of the 1980 Act, and which became effective on October 1, 1982. 1980 Act § 101(a)(1), 94 Stat. at 501–12 (codified at 42 U.S.C. §§ 670–676 (Supp. V 1981)). Section 671(a)(16) in Title IV–E requires the states to develop a "case plan" (defined in section 675(1)) for each child receiving foster care maintenance payments under the state plan, and to review the status of each child and the extent of compliance with the case plan at least every six months in accordance with section 675(5)(B). *See* 42 U.S.C. §§ 671(a)(16), 675(1), 675(5)(B) (Supp. V 1981).

The district court held that in order to receive federal funds under Title IV–E, DSS would have to comply with the case plan and review requirements of that law. Sept. 20, 1982, Order at 1–2, 1 J.A. at 642–43. The court further ordered that "DSS may not assign to its social workers a number of cases that is greater than the number of cases that workers are able to carry and simultaneously fulfill their obligations [under Title IV–E] to provide case plans and periodic review." *Id.* at 3, 1 J.A. at 644. The court stated that, in determining DSS's compliance with the social worker caseload order, it would enforce a rebuttable presumption that caseworkers are able to carry twenty "generic" cases and still complete their case plans and reviews. *Id.* The court ordered that DSS assign each case to a caseworker within 24 hours of DSS's receipt of the case. *Id.* Finally, the court directed the DSS to submit a report demonstrating DSS's compliance with the court's order within 60 days of DSS's submission of a Title IV–E plan to the Secretary of the Department of Health and Human Services (Secretary). *Id.* at 3–4, 1 J.A. at 644–45.

## II.

Massachusetts contends that the district court order was "tainted" because it granted relief premised on the court's determination of Title IV–E issues that were not raised in the complaint or considered at the hearings on the preliminary injunction, and of which Massachusetts had no notice prior to the close of evidence. The Common-

wealth claims that in all fairness the district court should have reopened the preliminary injunction hearings so that it could have presented evidence regarding (1) its anticipated compliance with Title IV–E, *see* Brief of Appellants at 20–22 (examples of evidence relevant to Title IV–E compliance), and (2) the propriety of the court's choice of preliminary relief, *id.* at 23. Massachusetts argues that, in deciding Title IV–E issues without its consent, the court acted unfairly and to the Commonwealth's prejudice.

Rule 15(b) of the Federal Rules of Civil Procedure provides in part:

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.

An amendment to conform the pleadings may be made at any time on motion of any party. Indeed, even the failure to make an amendment at all does not affect the judgment. *See Cabel v. United States,* 113 F.2d 998, 1000 (1st Cir.1940). The purpose of an amendment to conform to proof is to bring the pleadings in line with the actual issues upon which the case was tried. Therefore, an amendment after judgment is not permissible if it brings in some entirely extrinsic issue or changes the theory on which the case was actually tried, even though there is some evidence in the record—introduced as relevant to some other issue—that would support the amendment. *See Vargas v. McNamara,* 608 F.2d 15, 18 n. 3 (1st Cir.1979). The test of consent by implication to the trial of claims not set forth in the complaint is whether a party did not object to the introduction of evidence or introduced evidence himself that was relevant *only* to that issue. *Rokowsky v. Gordon,* 531 F.Supp. 435, 437

(D.Mass.1982) (citing *Marston v. American Employers Insurance Co.,* 439 F.2d 1035, 1042 (1st Cir.1971)), *aff'd,* 705 F.2d 439 (1st Cir.1983). *See also* 3 J. MOORE, MOORE'S FEDERAL PRACTICE, ¶ 15.13[2], at 15–174 to –175 (2d ed. 1983). Even if this test is met, amendment should not be allowed if it would prejudice a party. *Scully Signal Co. v. Electronics Corp. of America,* 570 F.2d 355, 362 (1st Cir.1977), *cert. denied,* 436 U.S. 945, 98 S.Ct. 2848, 56 L.Ed.2d 787 (1978).

■ Appellees, as plaintiffs below, failed to file a motion to amend their complaint to include causes of action under Title IV–E. The district court therefore correctly refused to consider any claims under Title IV–E. Although appellees-plaintiffs introduced evidence relevant to claims under Title IV–E, the district court noted:

> [I]n light of the complexity of the issues presented with respect to plaintiffs' claims under [Title IV–A], evidence relevant to claims under any additional provisions may well have been perceived by defendants simply as proof of plaintiffs' assertions under [Title IV–A] and not as evidence raising issues or claims not pleaded.

Sept. 20, 1982, Opinion at 6 n. 5, 1 J.A. at 591. The district court, however, then went on to consider Title IV–E in fashioning relief.

Assuming arguendo that the district court's decision to consider Title IV–E in fashioning preliminary equitable relief in effect allowed the pleadings to be amended, our review is limited to determining whether the district court abused its discretion. *Keeler v. Hewitt,* 697 F.2d 8, 13–14 (1st Cir.1982). Although it might have been preferable for the district court to reopen the hearing and to permit the Commonwealth to present evidence of its anticipated compliance with Title IV–E, we hold that the failure to do so did not *in these circumstances* constitute such abuse of discretion as to warrant reversal. Before the close of evidence at the hearing on the motion for a preliminary injunction, the district court explicitly raised the question of the effect of the replacement of Title IV–A with Title IV–E. In fact, the district court expressly asked about the availability of relief under Title IV–E. Moreover, Massachusetts was not prejudiced by the district court's action. The district court reasoned:

> Thus, proof of violation of the generalized case plan and periodic review requirements of [Title IV–A] also constitutes proof of violation of the more stringent, detailed requirements for case plans and case review set forth in [Title IV–E]. Plaintiffs have exhibited a likelihood of success on their claims under [Title IV–A]. Since DSS is not now complying with [Title IV–A], it would take nothing short of a miracle for the Department to come into compliance with [Title IV–E] by October 1, 1982, when those provisions become applicable. In spite of improvements by DSS, the evidence does not warrant a finding that such a miracle will occur.

Sept. 20, 1982, Opinion at 30, 1 J.A. at 615. We are in agreement. Therefore, on these facts, we cannot say the district court abused its discretion in fashioning relief under Title IV–E for violations of Title IV–A.

### III.

■ The district court concluded that the plaintiffs are entitled to enforce rights under various provisions of Title IV–E through a private cause of action under 42 U.S.C. § 1983 (Supp. V 1981). Sept. 20, 1982, Opinion at 31, 1 J.A. at 616.[7] Defendants-appellants say the court was wrong.

Section 1983 creates liability to a private action in anyone who, "under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." *Id.* In *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65

---

**7.** This conclusion was one basis for the district court's decision to fashion relief around the provisions of Title IV–E. Sept. 20, 1982, Opinion at 31, 1 J.A. at 616.

L.Ed.2d 555 (1980), the Supreme Court reaffirmed that section 1983 provides a cause of action against state officials for deprivation of rights conferred by AFDC. In *Middlesex County Sewerage Authority v. National Sea Clammers Association,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981), however, the Court said that the more general proposition enunciated in *Thiboutot*—that section 1983 provides a remedy for violations by state officers of *any* federal law—is limited in two ways. There will be no section 1983 remedy when (1) the federal law confers no enforceable right, or (2) Congress has foreclosed the 1983 remedy through the act under consideration. *Id.* at 19, 101 S.Ct. at 2625–26. As an example of the latter category, the Court stated that "[w]hen the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983." *Id.* at 20, 101 S.Ct. at 2626. Appellants contend that Congress intended 42 U.S.C. § 671(b) (Supp. V 1981), which authorizes the Secretary to withhold or reduce federal funding under Title IV–E when a state does not comply with federal law, to be the sole remedy for violations of Title IV–E, to the exclusion of section 1983 actions.

In both the June 9, 1981, Memorandum and Order and his Opinion of September 20, 1982, Judge Keeton paid careful attention to the questions of the existence and possible preemption of rights of action under section 1983. He found some provisions of the Social Security Act ("SSA") unenforceable under section 1983 because Congress did not mean for them to create rights enforceable by individuals. *See, e.g.,* June 9, 1981, Memorandum & Order at 19, 1 J.A. at 120. In concluding that the individual rights that do exist are enforceable under section 1983, Judge Keeton relied primarily on the Supreme Court's holding in *Rosado v. Wyman,* 397 U.S. 397, 420, 90 S.Ct. 1207, 1222, 25 L.Ed.2d 442 (1970):

> We have considered and rejected the argument that a federal court is without power to review state welfare provisions or prohibit the use of federal funds by the States in view of the fact that Congress has lodged in the Department of HEW the power to cut off federal funds for noncompliance with statutory requirements. We are most reluctant to assume Congress has closed the avenue of effective judicial review to those individuals most directly affected by the administration of its program.

*See* Sept. 20, 1982, Opinion at 32, 1 J.A. at 617. In view of the clarity of the Court's holding in *Rosado* and the care exhibited in Judge Keeton's opinions, we find Massachusetts's challenge unavailing.

Since at least 1968 the Supreme Court has implicitly and explicitly held that rights under various provisions of the Social Security Act are enforceable under section 1983. *See, e.g., Thiboutot,* 448 U.S. at 6, 100 S.Ct. at 2505 (citing *Miller v. Youakim,* 440 U.S. 125, 132 & n. 13, 99 S.Ct. 957, 962 & n. 13, 59 L.Ed.2d 194 (1979); *Quern v. Mandley,* 436 U.S. 725, 729 & n. 3, 98 S.Ct. 2068, 2072 & n. 3, 56 L.Ed.2d 658 (1978); *Van Lare v. Hurley,* 421 U.S. 338, 95 S.Ct. 1741, 44 L.Ed.2d 208 (1975); *Townsend v. Swank,* 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971); *King v. Smith,* 392 U.S. 309, 311, 88 S.Ct. 2128, 2130, 20 L.Ed.2d 1118 (1968)); *Rosado,* 397 U.S. at 402–05, 90 S.Ct. at 1212–14. In none of these cases did the Court find remedies analogous to section 671(b) to be exclusive. Indeed, the Court has found remedies under the SSA to be exclusive only when the Act expresses such an intent. Thus in *Weinberger v. Salfi,* 422 U.S. 749, 756–62, 95 S.Ct. 2457, 2462–65, 45 L.Ed.2d 522 (1975), the Court found that 42 U.S.C. § 405(h) precludes actions to enforce rights under Title II of the Act. Section 405(h) says in so many words that a person can bring suit in federal court to enforce Title II only by way of the judicial review provisions of Title II, which means in effect under 42 U.S.C. § 405(g). The contrast with our case is clear: section 671(b), while providing the Secretary authority to withhold funds from noncomplying states, in no way purports to limit the availability of relief under any other provision. In view of the Court's consistent

holding that section 1983 provides a cause of action for violations of the Social Security Act, and in view of the fact that the Court has required express statutory language for the SSA remedies to preclude other remedies, there must be a strong showing before we will hold that the section 1983 remedy is unavailable here.

Appellants assert that the existence of the Secretary's power to withhold federal funds from states precludes individual enforcement of rights against the states. Appellants contend that the enforcement discretion given the Secretary under section 671(b) would be weakened by allowing private causes of action under section 1983. But this is indistinguishable from the argument rejected in *Rosado*, where the Court held that the existence of the Secretary's authority under 42 U.S.C. § 604(a) to withhold funds did not preclude private actions to enforce individual rights under the statute. The relation of section 604(a) to section 602(a), moreover, is the same that appellants assert requires section 671(b)'s remedy to be exclusive. In both, one section establishes certain elements that must be included in a state plan and another section provides that the Secretary, upon finding "a substantial failure to comply" with the first section, in his discretion may withhold some or all of the federal funds otherwise due the state. *See* 42 U.S.C. §§ 602(a), 604(a), 671 (1976 & Supp. V 1981). Appellants have shown us nothing that distinguishes the discretion under section 671(b) from that under section 604(a). They can refer us to no expression of congressional intent, in the statute or in the legislative history, that would indicate either that Congress intended for section 671(b) to be exclusive or that the Secretary's enforcement discretion is of such great scope that individuals may not enforce their rights under section 1983.

Appellants attempt to distinguish *Rosado*, but their distinction is unimpressive. In *Rosado* the plaintiffs challenged "a discrete statute," which the Supreme Court found inconsistent with the SSA; appellants argue that "[t]he Secretary, of course, would have [had] no discretion to determine otherwise. In the § 1983 action posited by the court [in this case], the plaintiffs would challenge not a state statute or regulation but would allege *generally* that the state's performance is deficient." Brief of Appellants at 29 (emphasis in original). The latter task, they assert, is far less manageable than the former and therefore should be left to the Secretary's discretion. *Id.* at 29–30 (citing *Garrity v. Gallen*, 522 F.Supp. 171, 204 (D.N.H.1981)).

It is unclear exactly what appellants mean by this. If they mean that, because Massachusetts's statute and regulations are consistent with federal law, the state's "general" practices are immune from review under section 1983, they are clearly wrong. By its plain terms section 1983 protects individuals from deprivation of federal rights by state officials, whether the deprivation is due to state "statute, ordinance, regulation, *custom, or usage.*" 42 U.S.C. § 1983 (Supp. V 1981) (emphasis added). If Massachusetts's practice is to deprive foster children of federal statutory rights, even though the state's law on the books requires otherwise, section 1983 is available as a remedy. *Cf. Monell v. Department of Social Services*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978) ("[L]ocal governments, like every other § 1983 'person,' by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels."). Indeed, one purpose for enacting section 1983 "was to provide a federal remedy where the state remedy, though adequate in theory, was not available in practice." *Monroe v. Pape*, 365 U.S. 167, 174, 81 S.Ct. 473, 477, 5 L.Ed.2d 492 (1961).

If appellants' argument is that it is difficult to determine whether the state's foster care program in practice violates federal standards and therefore courts should not attempt to do so, they are also surely off base. Federal courts are not free to withdraw from deciding cases simply because they are difficult. *Cf. Colorado River Water Conservation District v. United*

*States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976) (noting "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them").

The alleged distinction, moreover, does not support the conclusion appellants draw. Appellants tell us that the power to cut off funds facilitates a process of dialogue and accommodation between the Secretary and the state, and adjudication would interfere with this process. "Assuming, *arguendo,* that a court could properly determine what level of performance constituted substantial compliance . . . , how could a court properly determine the sanction for noncompliance?" Brief of Appellants at 28. Appellants concede, however, that adjudication is appropriate in cases like *Rosado,* where a state law or regulation is called into question, because it is relatively easy to determine whether the state has complied with federal law. Yet in such cases there remains the task of determining the appropriate sanction, which appellants say courts are not able to perform. Appellants do not explain why judicial determination of sanction is appropriate for a *Rosado* but not for a *Lynch.*

Appellants cite *Garrity v. Gallen,* 522 F.Supp. 171, 202 (D.N.H.1981), to support their contention that it is sensible for the Secretary's enforcement mechanism to be exclusive. The reference is inapposite. *Garrity* does not involve a provision of the Social Security Act, but rather the Developmentally Disabled Assistance and Bill of Rights Act (DDA), which, if nothing else, does not share the SSA's legacy of private enforcement, from *King v. Smith* through *Thiboutot.* More importantly, the court found that the DDA does not confer rights to individuals beyond the right to bring an action to compel the Secretary to enforce the Act. *Id.* at 201. In contrast, Judge Keeton here found that the SSA created rights in individuals against the states, and these, therefore, can be enforced under section 1983.

Appellants also argue that, since individuals who are denied benefits under Title

IV–E must be provided a hearing pursuant to section 671(a), there is nothing harsh or unusual in precluding a private right of action under section 1983. The same might have been argued in *King v. Smith, Maine v. Thiboutot,* or any of the other cases cited above, yet the Supreme Court did not find the existence of a post-deprivation hearing to preempt section 1983 relief in those cases. Post-deprivation relief is not really responsive to cases such as this one, moreover, where a class alleges systemic malfeasance. Such problems are treated inefficiently if they must be pursued individually.

In sum, nothing in the language or structure of Title IV–E suggests that Congress meant section 671(b) to be an exclusive remedy, and appellants have shown us nothing in its legislative history or in the case law that would lead us to a different conclusion. The district court properly concluded that *Rosado v. Wyman* in effect settled this issue long ago, and, to the extent that Title IV–E confers rights on individuals, section 1983 is available to remedy violations of those rights.

### IV.

The district court determined that "the most appropriate relief in this case is forward-reaching relief designed to secure [DSS] compliance with sections 671(a)(16) and 675(1), (5)(B) of Title IV–E, in the event that the Commonwealth submits and obtains [HHS] approval of a Title IV–E plan." Sept. 20, 1982, Opinion at 30, 1 J.A. at 615. In order to ensure prospective compliance with Title IV–E, the court ordered DSS not to assign its social workers "a number of cases that is greater than the number of cases that workers are able to carry and simultaneously fulfill their obligations . . . to provide case plans and periodic review." Sept. 20, 1982, Order at 3, 1 J.A. at 644. The court established a "rebuttable presumption" that an average ratio in each area of twenty "generic" cases per caseworker was the maximum allowable consistent with fulfilling the obligations imposed by Title IV–E. *Id.* In addition, the court ordered that the DSS shall, within 24

hours of receipt of a case, assign it to a social worker. *Id.*

Massachusetts argues that the court's finding that it would not comply with Title IV–E by October 1, 1982, was clearly erroneous. The Commonwealth cites several factors indicating its progress toward Title IV–E case plan and review compliance. These factors include: (1) its ASSIST program, a computerized management information system implemented in July and October 1982; and (2) its Standards of Practice, a recently formalized description of the "basic tenets of social work as it should be practiced within DSS." [8] Brief of Appellants at 40. The Commonwealth concludes: "The court, thus, failed to appreciate that the 'miracle' which was needed was coming to pass through the cooperative efforts of DSS and federal officials." *Id.* at 44.

The findings of fact of a district court are reviewable only for clear error as prescribed in Fed.R.Civ.P. 52(a). *Fortin v. Comm'r of Mass. Dept. of Public Welfare,* 692 F.2d 790, 794 (1st Cir.1982); *Keebler Co. v. Rovira Biscuit Corp.,* 624 F.2d 366, 377 (1st Cir.1980); *Constructora Maza, Inc. v. Banco de Ponce,* 616 F.2d 573, 576 & n. 2 (1st Cir.1980); *Raymond v. Eli Lilly & Co.,* 556 F.2d 628, 629 (1st Cir.1977). This is true even when a mixed question of law and fact is presented. *See Sweeney v. Board of Trustees,* 604 F.2d 106, 109 n. 2 (1st Cir.1979), *cert. denied,* 444 U.S. 1045, 100 S.Ct. 733, 62 L.Ed.2d 731 (1980). This standard is met only when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). We find the Commonwealth's reargument of the facts unconvincing. The district court properly inferred from the Commonwealth's noncompliance with the case plan and review requirements in June 1982 that

there was a substantial likelihood that the Commonwealth would not be able to comply with the more stringent requirements to become effective in October 1982.

Massachusetts also claims that the district court abused its discretion by failing to allow DSS to formulate its own plan of compliance with Title IV–E. In *Rosado v. Wyman,* 397 U.S. 397, 421, 90 S.Ct. 1207, 1222, 25 L.Ed.2d 442 (1970), the Supreme Court set out the appropriate remedy for violations of rights secured by federal spending programs. The Court stated that in such cases the district court should announce what is necessary to comply with the federal program and then allow an appropriate period of time for the state to decide whether it preferred to forego federal funds. If the state decides to retain funding it must propose a plan for achieving compliance which would then be subject to court approval. *Id. See also Pennhurst State School & Hospital v. Halderman,* 451 U.S. 1, 30 n. 23, 101 S.Ct. 1531, 1546 n. 23, 67 L.Ed.2d 694 (1981).

Because the district court on the record before us substantially followed the *Rosado* approach, we cannot say its order constituted an abuse of discretion. It ordered compliance with Title IV–E, and stated that federal funds would be cut off if the Commonwealth failed to file a written report demonstrating compliance within 60 days of submitting its Title IV–E plan to the Secretary. The court did take the additional steps of establishing caseload guidelines and the 24-hour assignment rule. These steps do raise federalism concerns in that the court's order limits the Commonwealth's choice of approaches for compliance with federal law. These steps, however, are not unprecedented, *see, e.g., Perez v. Lavine,* 412 F.Supp. 1340, 1356–57 (S.D.N.Y.1976), and do not raise concerns as troubling as a district court's "managing [a mental institution] or deciding in the first instance which patients should remain [in the mental insti-

---

8. Massachusetts also contends that the district court erroneously excluded evidence comparing the Commonwealth's delivery of services to that of other states. Brief of Appellants at

41–44. Exclusion of the proffered evidence was not clear error and, therefore, must stand on appeal.

tution] and which should be removed," issues that arose in the *Pennhurst* case, 451 U.S. at 54, 101 S.Ct. at 1559 (White, J., dissenting). *See also id.* at 30 n. 23, 101 S.Ct. at 1546 n. 23 (majority opinion supporting Justice White's views on this point.) Because, as discussed shortly, the district court's order is more in the nature of an outline of the requirements of federal law and because it leaves Massachusetts the opportunity to propose other appropriate means of complying with federal law, we reject this argument by the Commonwealth.

Finally, Massachusetts asserts that the caseload guidelines and the 24-hour assignment rule are overly broad and intrusive. The "principles of equity jurisprudence" suggest that "the scope of injunctive relief is dictated by the extent of the violation established ... [and] the relief afforded [may not be] more burdensome than necessary to redress the complaining parties." *Califano v. Yamasaki,* 442 U.S. 682, 702, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979). *See also Milliken v. Bradley,* 433 U.S. 267, 280–81, 97 S.Ct. 2749, 2757–58, 53 L.Ed.2d 745 (1977). Accordingly, any injunctive order by the district court was required to be narrowly tailored to ensure compliance with the case plan and case review requirements of Title IV–E. We believe that the caseload guidelines and the 24 hour assignment rule meet this standard.

The district court found that, "[t]he evidence is overwhelming that the existence of high caseloads is a predominant factor preventing DSS employees from fulfilling their [case plan and review] responsibilities under federal law." Sept. 20, 1982, Opinion at 36, 1 J.A. at 621. Thus the caseload guidelines were properly directed to addressing the root cause of the Commonwealth's case plan and review deficiencies. By incorporating a *rebuttable* presumption, the district court built some flexibility into the guidelines, explicitly inviting the Commonwealth to return to it when it believed itself capable of demonstrating that its social workers could comply with the law while handling more than 20 cases. *Id.* at 38, 1 J.A. at 623.

The 24-hour assignment rule is similarly supported. The court found "significant numbers" of cases for which no direct service social worker was responsible. The court noted that "[i]t is evident that when a case is not assigned to a social worker directly responsible for servicing the case, the case planning and periodic review mandated by Title IV–E will not be provided." *Id.* at 39, 1 J.A. at 624. Massachusetts argues that there is a defect in the 24-hour assignment rule. *See* Reply Brief of Appellants at 21–23. It asserts that the rule can be read as requiring the assignment of all child welfare cases within 24 hours of receipt by DSS, but Title IV–E only applies to cases involving children "receiving foster care maintenance payments under the State plan," 42 U.S.C. § 671(a)(16) (Supp. V 1981). Appellees urge that a case plan is "central to avoiding unnecessary initial foster care placements, and to keeping a child at home when he or she has been returned there from foster care." Brief for Appellees at 49. We do not feel that the district court's order is demonstrably over broad in light of (1) the significant deficiencies in the Commonwealth's foster care program identified by the district court, and (2) the centrality to the amelioration of those deficiencies of the prompt formulation of an individual case plan. And, here again, we note the district court's announced readiness to entertain a showing that any of its requirements are unnecessary.

## V.

Finally, we wish to make clear that in substantially affirming the district court's order we do not foreclose all options to the Commonwealth of Massachusetts, should the order turn out to be unduly burdensome when placed into practice. Should Massachusetts discover after a good faith attempt to implement the court's order and a reasonable interval of time within which to do so that the order or some aspect thereof is simply unworkable, it may apply to the district court to modify the order accordingly. On the facts as presented at this time, however, we feel that the district court's

order is reasonable under the circumstances, and we affirm it in all respects.

*It is so ordered.*