The **GUILFORD COUNTY COMMUNITY ACTION PROGRAM, INC., Earl Jones, Kim Hayes, Virginia Diggs, Lynn Hill, and Margaret Clinard, Plaintiffs,**

v.

Lawrence D. **WILSON, individually and as an employee of the North Carolina Department of Health and Human Services, and H. David Bruton, individually and as an employee of the North Carolina Department of Human Services, Defendants.**

No. 1:03CV00427.

United States District Court, M.D. North Carolina.

Dec. 6, 2004.

Douglas S. Harris, Greensboro, NC, for Plaintiffs.

Alexander McClure Peters, Raleigh, NC, for Defendants.

*MEMORANDUM OPINION*

BEATY, District Judge.

## I. INTRODUCTION

Plaintiffs, the Guilford County Community Action Program ("GCCAP"), Earl Jones ("Jones"), Kim Hayes ("Hayes"), Virginia Diggs ("Diggs"), Lynn Hill ("Hill"), and Margaret Clinard ("Clinard")(collectively, "Plaintiffs") bring claims against two employees of the North Carolina Department of Health and Human Services ("NCDHHS") in both their individual capacities and official capacities as employees of that department, for damages caused as a result of the termination of a federal Community Service Block Grant ("CSBG") to GCCAP. Before the Court is Defendants' Motion to Dismiss [Doc. # 5], filed on July 22, 2003, seeking dismissal of all of Plaintiffs' Complaint under Fed.R.Civ.P. 12(b)(1) and (b)(6), on the grounds that Plaintiffs' claims are not cognizable under federal law, that Plaintiffs lack standing, that the action is barred by state immunity under the 11th Amendment and that Plaintiffs' failed to serve Defendant Bruton. Plaintiffs filed a Response to Defendants' Motion to Dismiss [Doc. # 9] on September 2, 2003, and Defendants filed a Reply [Doc. # 10] on September 22, 2003. Thus, this Motion is ripe for review.

## II. FACTUAL BACKGROUND

Taking the facts of the case in a light most favorable to Plaintiffs, as the Court must do in the context of a Motion to Dismiss, Plaintiffs state that GCCAP is a non-profit corporation that has operated in North Carolina since 1986. Plaintiff Jones is the director of GCCAP, and Plaintiff Hayes was an employee there. Plaintiffs Diggs, Hill, and Clinard were "persons who were eligible for help from GCCAP and were the intended beneficiaries of the federal funding." (Pl.'s Compl. at 2). Defendant Lawrence D. Wilson ("Wilson") is an employee of NCDHHS with responsibility for overseeing the Community Service Block Grant Program. Defendant H. David Bruton ("Bruton") is the former Secretary of NCDHHS. GCCAP was an eligible entity to receive federal Community Service Block Grants from NCDHHS, which GCCAP then used to provide services to alleviate poverty. GCCAP had served as a conduit for federal grants for more than a decade without incident.

In the fall of 1999, GCCAP suffered a fire which caused a power surge, in turn doing severe damage to the records in their computer. Prior to this accident, although all original checks and receipts were kept on paper, all accounting and categorization of the records was done on the computer. The power surge destroyed all accounting records on the computer. In the spring of 2000, NCDHHS began an audit of GCCAP and asked for their accounting records covering the period during which the fire occurred. GCCAP in turn asked NCDHHS for extra time to complete that audit because of the need to re-categorize the paper records. Defendant Wilson sent a letter on May 16, 2000 notifying GCCAP that their federal fund-

ing was being terminated immediately. GCCAP thereafter asked for a hearing but did not receive one. As a result of the loss of funding, GCCAP's operations ceased, Plaintiffs Jones and Hayes lost their jobs, and Plaintiffs Diggs, Hill, and Clinard, as intended recipients, alleged that their funding ceased. From these facts, Plaintiffs claim they were denied the chance to submit a plan to NCDHHS for improvement, denied training and technical assistance, and denied a hearing prior to funding termination.

Six months later, Defendant Bruton also wrote a letter to GCCAP denying their request for funding. Plaintiff GCCAP again asked for a hearing on the termination decision, which was granted. NCDHHS employee Lynda McDaniel, who was supervised by Bruton, oversaw the hearing and found against Plaintiffs. Plaintiffs allege that this hearing was tainted by the fact that McDaniel was not an independent trier of fact, and that she was assisted with her rulings at the hearing by a Deputy Attorney General, while another Deputy Attorney General was also present to represent NCDHHS. From these facts, Plaintiffs claim that at this hearing they were denied an impartial decision-maker, in violation of due process, as guaranteed by the Fourteenth Amendment.

Additionally, Plaintiffs allege that during this entire process Defendant Wilson instructed his finance officer and other employees of NCDHHS to refuse to assist employees of GCCAP with training and assistance on financial and accounting matters. Plaintiffs also allege that Defendant Wilson interfered with GCCAP's operations by calling members of the Board of Directors and telling them that they should resign from that board. From these facts, Plaintiffs allege a failure to train and provide technical assistance and wrongful interference with operations.

In redress for these violations, Plaintiffs ask this Court for monetary damages. Specifically, Plaintiffs allege that Defendants Wilson and Bruton caused Plaintiffs financial damages by improperly terminating funding and not assisting GCCAP as provided for in the CSBG program.

■ Plaintiffs' Complaint is brought pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment.[1] It is based upon Plaintiffs' allegation that Defendants' violated various provisions of 42 U.S.C. §§ 9914 and 9915. These particular provisions provide procedures both for state monitoring of eligible entities and termination of funding by the state in the event of an agency's failure to comply with the terms of the program. Plaintiffs ask for compensatory and punitive damages, costs, and such other and further relief this Court deems proper. For the reasons set out herein, the Court will dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), in that the statutes Plaintiffs attempt to rely on do not create any federal rights for any of the Plaintiffs.

---

1. Plaintiffs are also suing under 28 U.S.C. § 1343, which allows parties to recover damages when suing under 42 U.S.C. § 1983; however, similar to the discussion herein as to 42 U.S.C.1983, § 1343 only provides federal jurisdiction in the event of the deprivation of a specific and separate federal right by a state official acting under the color of law. When properly invoked, § 1343 only provides jurisdiction; it does not "create or define bases or causes of action for civil rights cases." *Duffield v. Memorial Hospital Ass'n.,* 361 F.Supp. 398, 401 (S.D.W.Va.1973), *aff'd on other grounds* 503 F.2d 512 (4th Cir.1974). Thus, because this Court does not find that Plaintiffs have stated a separate basis in federal law to a right, all claims brought under § 1343 are similarly subject to dismissal as the Court finds herein with respect to Plaintiffs other claims for relief.

## III. DEFENDANT'S MOTION TO DISMISS

### A. Motion to Dismiss Standard

With respect to a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, dismissals are allowed "only in very limited circumstances." *Rogers v. Jefferson–Pilot Life Ins. Co.*, 883 F.2d 324, 325 (4th Cir.1989). Generally, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002) (internal quotations omitted); *accord Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993). In making this determination, a court must view the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded factual allegations. *Randall v. United States*, 30 F.3d 518, 522 (4th Cir.1994). Thus, the purpose of a motion to dismiss is to test the legal sufficiency of the complaint and not the facts that support it. *Neitzke v. Williams*, 490 U.S. 319, 326–27, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Revene v. Charles County Comm'rs*, 882 F.2d 870, 872 (4th Cir.1989)(internal quotations omitted).

### B. History and Purpose of CSBG Program

The CSBG program [2] began in 1981 as a modification to the federal Economic Opportunity Act ("EOA"). The EOA was designed to help "alleviate the causes and effects of poverty." *Accion Social de Puerto Rico, Inc., v. Viera Perez*, 831 F.2d 365, 366 (1st Cir.1987). Similarly, the purpose of the CSBG program was to "provide assistance to States and local communities, working through a network of community action agencies ... for the reduction of poverty, the revitalization of low-income communities, and the empowerment of low-income families and individuals ... to become fully self-sufficient." 42 U.S.C. § 9901. The CSBG Act of 1981 shifted the responsibility for running the program from the federal government to the States. *Id.* Subsequently, funds to reduce poverty were allocated to the States through block grants. The States would then channel the funding to eligible entities, generally non-profit community action agencies, that specialized in poverty reduction. *Id.* In turn, those agencies provided funding to individuals and to programs designated to reduce poverty.

### C. Discussion of 42 U.S.C. § 1983 and 42 U.S.C. § 9915

■ The initial question before the Court is whether any of the Plaintiffs may enforce a claim for a violation of § 9915 under § 1983. Section 1983 "imposes liability on anyone who, under color of state law, deprives a person 'of any rights, privileges, or immunities secured by the Constitution and laws.'" *Blessing v. Freestone*, 520 U.S. 329, 340, 117 S.Ct. 1353, 1359, 137 L.Ed.2d 569 (1997). It does not, however, in itself create any substantive rights. *Beck v. City of Durham*, 129 F.Supp.2d 844, 849 (M.D.N.C.2000). Section 1983 provides in part:

§ 1983. Civil action for deprivation of rights Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the

---

**2.** Codified at U.S.C. §§ 9901 *et seq.*

jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...

42 U.S.C. § 1983. Thus, in order for Plaintiffs to bring a claim under § 1983, this Court must first determine if Plaintiffs have any enforceable rights provided by § 9915,[3] which is the statute that Plaintiffs claim that Defendants violated.

Plaintiffs' Complaint alleges multiple violations of 42 U.S.C. § 9915, which reads:

42 U.S.C. § 9915. Corrective action; termination and reduction of funding

(a) Determination

If the State determines, on the basis of a final decision in a review pursuant to section 9914 of this title, that an eligible entity fails to comply with the terms of an agreement, or the State plan, to provide services under this chapter or to meet appropriate standards, goals, and other requirements established by the State (including performance objectives), the State shall -

(1) inform the entity of the deficiency to be corrected;

(2) require the entity to correct the deficiency;

(3)(A) offer training and technical assistance, if appropriate, to help correct the deficiency, and prepare and submit to the Secretary a report describing the training and technical assistance offered; or

(B) if the State determines that such training and technical assistance are not appropriate, prepare and sub-

mit to the Secretary a report stating the reasons for the determination;

(4)(A) at the discretion of the State (taking into account the seriousness of the deficiency and the time reasonably required to correct the deficiency), allow the entity to develop and implement, within 60 days after being informed of the deficiency, a quality improvement plan to correct such deficiency within a reasonable period of time, as determined by the State; and

(B) not later than 30 days after receiving from an eligible entity a proposed quality improvement plan pursuant to subparagraph (A), either approve such proposed plan or specify the reasons why the proposed plan cannot be approved; and

(5) after providing adequate notice and an opportunity for a hearing, initiate proceedings to terminate the designation of or reduce the funding under this chapter of the eligible entity unless the entity corrects the deficiency.

(b) Review

A determination to terminate the designation or reduce the funding of an eligible entity is reviewable by the Secretary. The Secretary shall, upon request, review such a determination. The review shall be completed not later than 90 days after the Secretary receives from the State all necessary documentation relating to the determination to terminate the designation or reduce the funding. If the review is not completed within 90 days, the determination of the State shall become final at the end of the 90th day.

(c) Direct assistance

---

3. Plaintiffs also reference a violation of 42 U.S.C. § 9914 in their Complaint. However, Plaintiffs never specify what provision of that statute Defendants violated, and this Court will not search for such a violation where Plaintiffs have not so alleged one to exist.

Whenever a State violates the assurances contained in section 9908(b)(8) of this title and terminates or reduces the funding of an eligible entity prior to the completion of the State hearing described in that section and the Secretary's review as required in subsection (b) of this section, the Secretary is authorized to provide financial assistance under this chapter to the eligible entity affected until the violation is corrected. In such a case, the grant or allotment for the State under section 9905 or 9906 of this title for the earliest appropriate fiscal year shall be reduced by an amount equal to the funds provided under this subsection to such eligible entity.

Plaintiffs' specific allegations are that Defendants violated § 9915(a)(1) in that Defendants failed to inform GCCAP of its deficiency in specific terms prior to terminating their funding. Plaintiffs also allege a violation of § 9915(a)(3)(A) because Defendants failed to offer training and technical assistance to the agency to help correct the deficiency.[4] Plaintiffs's further allege a violation of § 9915(a)(4)(A) based on Defendants' failure to provide the Plaintiff agency a 60–day grace period in order to develop a quality improvement plan. They also allege that Defendants violated § 9915(a)(4)(B) because Defendants did not respond to any proposed improvement plan put forward by Plaintiffs (although Plaintiffs never affirmatively state that they had an improvement plan to put forward). Plaintiffs final allegation with respect to § 9915(a)(5) is that Defendants failed to give notice and opportunity for hearing prior to termination of funding.

Because of the lack of a hearing prior to the termination of their funding and because of the way Defendants chose to provide them with a hearing subsequent to the termination of funding determination, Plaintiffs have also alleged a violation of the due process clause of the Fourteenth Amendment.

It is important to note at this time that there are three distinct groups of Plaintiffs in this case: GCCAP, that is, the agency itself, employees of the agency, and intended recipients of agency grants. The Court will address each of Plaintiffs' groups in turn, as the Court considers whether Congress intended for any of these Plaintiffs to have a private right of enforcement under § 9915.

### D. Intent of Congress to Provide a Right Under 42 U.S.C. § 9915

From the Court's review of § 9901 *et seq.*, it does not appear that Congress explicitly provided for private enforcement of the statute. In fact, there is no point in the statute that it expressly says that any private individual may sue state officials to require them to perform their obligations under the statute. Therefore, if there is a right of action for Plaintiffs based on § 9915, it must be implied. *See Bonano v. E. Caribbean Airline Corp.*, 365 F.3d 81, 84 (1st Cir.2004)(finding no explicit right in the statute left only consideration of implied rights).

To begin, this Court notes that the Supreme Court has been especially reluctant to imply private rights in cases enacted under Congress' spending powers. In *Pennhurst State School and Hospital v.*

---

4. Plaintiffs cite to a violation of § 9915(a)(4), (A)(3) but it is clear from the complaint that they actually mean a violation of § 9915(a)(3)(A) and (B), because the claimed violation is for failing to "offer training and technical assistance to the Agency to help correct the deficiency, if appropriate, and if not appropriate explain in a report to the United States Department of Health and Human Services who (sic) it is not appropriate." *Pls.' Compl.* at 3.

*Halderman,* the court explained that "[i]n legislation enacted pursuant to the spending power, the typical remedy for state noncompliance with federally imposed conditions is not a private cause of action for noncompliance but rather action by the Federal Government to terminate funds to the State." *Pennhurst State Sch. & Hosp. v. Halderman,* 451 U.S. 1, 28, 101 S.Ct. 1531, 1545, 67 L.Ed.2d 694 (1981). Since *Pennhurst,* the court has remained reluctant to find that spending legislation gave rights enforceable under § 1983, concluding that it did so in only two instances: *Wright v. Roanoke Redevelopment & Housing Authority,* 479 U.S. 418, 429, 107 S.Ct. 766, 773, 93 L.Ed.2d 781 (1987) and *Wilder v. Virginia Hospital Association,* 496 U.S. 498, 523, 110 S.Ct. 2510, 2525, 110 L.Ed.2d 455 (1990). In those two cases, the statutory provisions conferred an "objective" monetary entitlement upon plaintiffs, and there was no sufficient administrative means of enforcing the requirements against defendants that failed to comply. *Gonzaga Univ. v. Doe,* 536 U.S. 273, 280–81, 122 S.Ct. 2268, 2274, 153 L.Ed.2d 309 (2002).

In the instant case, the CSBG program was also enacted under Congress' spending powers. The CSBG program does not, however, appear to confer any specific monetary entitlements upon Plaintiffs, in the way that other benefits are provided to specifically designated individuals, which will be discussed at greater length *infra.* Additionally, unlike the statutory provisions referred to in *Wright* and *Wilder,* § 9915 does provide an administrative means of enforcing the requirements against Defendants, including allowing the affected agency to ask the U.S. Secretary of Health and Human Services (the "Secretary"), who has the authority to review the funding termination, to provide for interim funding for an affected entity. Thus, the Court finds that the CSBG program is dissimilar to the programs discussed in *Virginia Hospital Association* and *Wilder,* making both cases unconvincing authority for answering the question of whether § 9915 provides any of the Plaintiffs with federal rights.

To the extent that such a right may exist, the U.S. Supreme Court, in *Gonzaga,* streamlined the test to determine whether a federal statute creates by implication any privately enforceable federal rights. There, the court found that under *Blessing v. Freestone,* 520 U.S. 329, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997), it is only the violation of *rights,* not *laws,* that gives rise to § 1983 actions. *Gonzaga,* 536 U.S. at 283, 122 S.Ct. at 2275 (citing *Blessing,* 520 U.S. at 340, 117 S.Ct. at 1359)(emphasis in original). Thus, not all violations of federal statutes necessarily give any particular plaintiff a private right of action. The court stated in *Gonzaga* that "[w]e now reject the notion that our cases permit anything short of an unambiguously conferred right to support a cause of action brought under § 1983." *Gonzaga,* 536 U.S. at 283, 122 S.Ct. at 2275.[5]

The court in *Gonzaga* further noted that Congress has not conferred an unambiguous right where a "statute by its terms grants no private rights to any identifiable class.... For a statute to create such private rights, its text must be 'phrased in

---

**5.** Ultimately, the court held in *Gonzaga* that the Family Educational Rights and Privacy Act ("FERPA") did not provide rights to individual students for whom colleges and universities had released personal information without the permission of a parent. 536 U.S. at 279, 122 S.Ct. at 2273 ("[W]e have never before held, and decline to do so here, that spending legislation drafted in terms resembling those of FERPA can confer enforceable rights.") The Act had no rights-creating language and generally governed the release of information in the aggregate rather than individual instances.

terms of the persons benefited.'" *Id.* at 284, 122 S.Ct. at 2275 (citing *Cannon v. University of Chicago,* 441 U.S. 677, 692 n. 13, 99 S.Ct. 1946, 1955 n. 13 (1979))(some internal quotation marks omitted). In those instances, where Congress has unambiguously conferred a private right, Congress used language like that in Title VI of the Civil Rights Act of 1964 ("No person in the United States shall ... be subjected to discrimination under any program or activity receiving Federal financial assistance" 42 U.S.C. § 2000d) and Title IX of the Education Amendments of 1972 ("No person in the United States shall, on the basis of sex, ... be subjected to discrimination under any education program or activity receiving Federal financial assistance" 20 U.S.C. § 1681(a)). In both of these examples, Congress specifically identified the persons to be benefited and stated what rights those individuals possessed.

Furthermore, it has also been determined that in order to create an enforceable right, the right alleged must not be "vague and amorphous" such that enforcement would strain judicial competence. *Blessing,* 520 U.S. at 340–41, 117 S.Ct. at 1359. It must also unambiguously impose a binding obligation on the states as shown through "mandatory, rather than precatory, terms." *Blessing,* 520 U.S. at 341, 117 S.Ct. at 1359.

The Court finds that § 9915 does not contain language that unambiguously confers a private right on any Plaintiff, and furthermore, that language is not written in mandatory terms. For example, Plaintiffs argue that Defendants failed to inform GCCAP of its deficiency in specific terms prior to terminating their funding, a violation of § 9915(a)(1). However, that section of the statute does not require that the entity be informed of the deficiency in "specific terms"; it only states that the

entity be informed of the deficiency to be corrected, and Plaintiffs acknowledge receiving a letter from Defendant Wilson denying funding based on their inability to complete the audit. Plaintiffs further argue that Defendants failed to offer training and assistance to them in preparing for the audit. However, under the language of § 9915(a)(3)(A), a state "shall" offer such assistance "if appropriate." The words "if appropriate" clearly indicate that a state has discretion in providing training and assistance to the entity involved, depending on the situation. Plaintiffs then argue that Defendants failed to allow them time to develop and implement a plan to correct deficiencies after notification of the deficiency. However, the language of § 9915(a)(4)(A) states that a state "shall" grant such time at its "discretion ... (taking into account the seriousness of the deficiency and the time reasonably required to correct the deficiency)." Again, this language is clearly not mandatory, and indicates that a state has discretion to decide whether a deficient entity should be given extra time to implement a quality improvement plan. Plaintiffs allege a violation of § 9915(a)(4)(B) because Defendants did not respond to any proposed improvement plan put forward by Plaintiffs. However, that provision is similarly subject to the discretionary language allowing the State to take into account the seriousness of the deficiency. Furthermore, Plaintiffs do not affirmatively allege that they put forward such a plan. Therefore, in all of these provisions, no right has been created in favor of any of the Plaintiffs that would be enforceable under § 1983.

Contrast those provisions with that of § 9915(a)(5). There, at least, Plaintiffs' argument of a violation of § 9915(a)(5) is strengthened by the language of that provision, which lacks the discretion-providing language of the other provisions and in-

stead states that Defendants "shall" provide adequate notice and "an opportunity for a hearing," only after which Defendants may "initiate proceedings to terminate" funding. Thus, since the language of this last provision is mandatory, this Court must determine whether the provision in question, the requirement of a hearing prior to termination of funding, is one that unambiguously confers a private right on some particular "class" of plaintiff. *Gonzaga,* 536 U.S. at 284, 122 S.Ct. at 2275.

Each of the Plaintiffs has alleged that they have been wronged by the termination of funding and have asserted that they have a private right to bring a claim against Defendants for damages. The Court, however, will address any interest that each of the three groups of Plaintiffs may have to assert a claim under § 9915, as it considers whether § 9915(a)(5) provides an unambiguous private right to any of the Plaintiffs.

### a. Individual Recipients

■ Nothing in § 9915, or for that matter, the whole of the Community Service Block Grant statute, §§ 9901 *et seq.,* specifically gives any individual recipient a right to sue under the statute. Section 9915 speaks only in terms of what the state should do to terminate an eligible entity's funding, when that entity fails to comply with the requirements of the program. The statute, however, does not speak at all to what an individual eligible for benefits may do in the case of a state refusing to provide that funding to a specific agency, such as GCCAP in this case. It is also clear that § 9915 does not extend to any individual recipients a specific right to receive funding from any particular agency. It also does not appear that §§ 9901 *et. seq.* offers any guarantee of benefits to any particular individual.

The Court notes that the CSBG program and its implementing language is entirely different from a similar federal block grant statute which has been found by at least one court to provide for a private right, that is, the Home Energy Assistance Program ("HEAP"). *Kapps v. Wing,* 283 F.Supp.2d 866, 869 (E.D.N.Y. 2003). HEAP provides funding to low-income individuals to pay for home energy costs. Both HEAP and CSBG are federal programs in which money flows from the federal government to the States which implement the programs. However, HEAP grants its relief to a specifically defined class of beneficiaries: "public assistance households and to non-public assistance households whose incomes are less than 150% of the federal poverty level or 60% of that state's median household income." 42 U.S.C. § 8624(b)(2)(A), (B), and (b)(3); *Kapps,* 283 F.Supp.2d at 869. In contrast, the CSBG statute states that 90 percent of the grant money a state receives shall be used to "make grants for the purposes described in section 9901 of this title to eligible entities." 42 U.S.C. § 9907. Those purposes include: "provid[ing] assistance to States and local communities ... for the reduction of poverty, the revitalization of low-income communities, and the empowerment of low-income families and individuals in rural and urban areas to become fully self-sufficient." 42 U.S.C. § 9901. This language does not indicate that any specific individual necessarily qualifies for CSBG money. None of these purposes provide this Court with a clear statement of who §§ 9901 *et. seq.* is designed to benefit, or rather, who is guaranteed to receive benefits and in what form those benefits shall take. Section 9901 is overall too "vague and amorphous" to determine whether any specific individual is guaranteed a benefit under the act. *Cf. King v. Town of Hempstead,* 161 F.3d 112, 115 (2d Cir.1998)(finding no private

right of action under the Housing and Community Development Act for home purchaser, a putative beneficiary of the act, despite language that stated the objective of the program was to provide decent housing and suitable living environment for persons of low and moderate income); *Nabke v. U.S. Dep't of Housing & Urban Dev.,* 520 F.Supp. 5, 8 (W.D.Mich.1981)(finding no private right under Housing and Community Development Act or Legal Services Act for home repair loan applicant because damage remedy would divert program resources and be inconsistent with purpose of program to rebuild decaying urban areas or provide legal services to indigents); *Fultz v. Neighborhood Legal Services,* 654 F.Supp. 881, 885 (W.D.Pa.1987)(finding no private right for indigent to legal services under Legal Services Corporation Act).

As previously noted, a statute must provide a clear right to some intended beneficiary in order for a private right of enforcement to exist. *See Gonzaga,* 536 U.S. at 284, 122 S.Ct. at 2275. The fact, however, that some individuals may receive benefits from the statute is a different question than whether the statute was *intended* to benefit that group of plaintiffs. *See Three Rivers Ctr. for Indep. Living, Inc. v. Hous. Auth. of Pittsburgh,* 382 F.3d 412, 419 (3d Cir.2004)(citing *Pa. Pharmacists Ass'n v. Houstoun,* 283 F.3d 531, 535 (3d Cir.2002)) (en banc). In the instant case, the statute Plaintiffs claim was violated speaks only to the responsibilities of the State and the ability of the eligible entity to receive a hearing. While intended recipients of GCCAP's grant money may in fact benefit if GCCAP receives a hearing prior to the termination of its funding from the state, the intended recipients are not parties to the statutory scheme created under § 9915. Thus, because § 9915 is silent as to the rights of individual recipients, and because §§ 9901 *et seq.* does not

even clearly determine who will benefit under the statutory scheme, leaving that up to the discretion of the State, this Court will not imply a private right to sue under § 9915 for Plaintiffs Diggs, Hill, and Clinard who have identified themselves as intended recipients of GCCAP's funding. Their claims, therefore, are clearly subject to dismissal pursuant to Defendants' Motion to Dismiss.

b. Agency Employees

█ Similarly, there is no language within § 9915, or §§ 9901 *et. seq.,* that specifically states that employees of agencies that distribute grant money have a right to enforce the procedures found in the statute. The statute never mentions the word "employee" or any similar reference to an employment relationship by name. Instead, it refers only to "the State" and "the ·entity." Contrast this with the case of *Kam Shing Chan v. City of New York,* 1 F.3d 96, 106 (2d Cir.1993), where the court found a private right in a section of the Housing and Community Development Act ("HCDA") that provided that "laborers and mechanics" who were employed with HCDA money were to be paid at "federally ·recognized prevailing rates." *See also King,* 161 F.3d at 114. In the instant case, however, employees of eligible entities are not mentioned. Section 9915 does say that the State should provide training and assistance to agencies, if appropriate, from which it might be possible to infer that if anyone is to be trained or assisted, it would be the employees of the agency. However, as previously discussed, that provision of the statute does not expressly make this training and technical assistance mandatory upon Defendants. As such, it cannot be found to provide employees of agencies a private right under the statute. *See Blessing,* 520 U.S. at 341, 117 S.Ct. at 1359 ("the statute

must unambiguously impose a binding obligation on the States"). Here, because the statute in question does not even mention employees of agencies, the Court finds the statute cannot be implied to confer rights upon any employees of GCCAP.

Furthermore, similar to the analysis for the intended recipients of grant money, "[t]he question is not simply who would benefit from the [statute], but whether Congress intended to confer federal *rights* upon those beneficiaries." *California v. Sierra Club,* 451 U.S. 287, 294, 101 S.Ct. 1775, 1779, 68 L.Ed.2d 101 (1981). For example, in *Osborn v. American Ass'n of Retired Persons,* the Ninth Circuit considered the Older American Community Service Employment Act. 660 F.2d 740, 744 (9th Cir.1981). The court noted that the Act consisted of a directive to the Secretary of Labor to withhold federal funds from employers that did not pay enrollees the statutory minimum wage. This Act had the effect of creating and protecting benefits for the retiree enrollees, but those benefits were "not conferred on them directly by the language of the statute, but incidentally by the Secretary's performing his statutory duty." *Id.* The court in *Osborn* thus found no private rights for plaintiff employees under this spending directive, as its language did not support the implication of a private right. *Id.* at 745. In the instant case, while employees of agencies undoubtedly benefit from their agencies' receipt of federal grant money, employees are not the intended beneficiary of § 9915, which only provides a directive that an agency is entitled to a hearing prior to the termination of funding. Nor are agency employees the intended beneficiary of §§ 9901 *et. seq.,* which generally provides for assistance to agencies and neighborhood-based organizations for the reduction of poverty and not for the benefit of any particular individual, including employees of eligible entities, such as

GCCAP. Plaintiffs have offered no support from the statute, § 9915, or otherwise, for their present claim that employees of agencies have a private right of action to enforce provisions of the statute. The Court as well finds no legal basis for creating a private right for agency employees for the enforcement of § 9915, nor will the Court infer that one impliedly exists under the statute.

c. Existence of Private Right of Action for the Agency Itself

■ The inquiry is more difficult with respect to whether § 9915 created any private right in the agency itself to a hearing prior to the termination of funding by the state. It is clear, however, that the answer to this question would be no, if Congress has otherwise provided a remedy for the enforcement of the statute within the statute itself. *See Bonano v. E. Caribbean Airline Corp.,* 365 F.3d 81, 85 (1st Cir. 2004)("[T]he scheme of enforcement actually spelled out in the Act counsels persuasively against implying a private right of action.") This Court will now consider whether § 9915 provides a statutory scheme for agency review such that it suggests that Congress, by writing it into the statute, precluded private enforcement rights for eligible agencies, thereby preventing agencies from bringing a § 1983 claim. *See Alexander v. Sandoval,* 532 U.S. 275, 291, 121 S.Ct. 1511, 1522, 149 L.Ed.2d 517 (2001)(holding there is no private right of action to enforce disparate-impact regulations brought under Title VI of the Civil Rights Act of 1964, in part because of the enforcement scheme Congress provided in that statute).

The Family Educational Rights and Privacy Act in *Gonzaga,* which has some language similar to § 9915, was not found to create any private right of action. There, the Supreme Court found that FERPA's

provisions spoke "only to the Secretary of Education, directing that '[n]o funds shall be made available' to any 'educational agency or institution' which has a prohibited 'policy or practice.' ... This focus is two steps removed from the interests of individual students and parents and clearly does not confer the sort of 'individual entitlement' that is enforceable under § 1983." *Gonzaga*, 536 U.S. at 287, 122 S.Ct. at 2275 (quoting *Blessing*, 520 U.S. at 343, 117 S.Ct. at 1361)(internal citations omitted).

Likewise, in *Sandoval*, the regulation at issue empowered state agencies to terminate funding after advising grant recipients of their failure to comply with the federal requirements. This regulation also required state agencies to communicate these termination decisions to Congress before terminating funding. In *Sandoval*, the Supreme Court held that: "Whatever these elaborate restrictions on agency enforcement may imply for the private enforcement of rights created outside of [the statute] ... they tend to contradict a congressional intent to create privately enforceable rights through [the statute] itself. The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." 532 U.S. at 290, 121 S.Ct. at 1521–22 (citations omitted).

Also illustrative is the case of *People's Housing Development Corp. v. Poughkeepsie*, 425 F.Supp. 482 (S.D.N.Y.1976). In that case, the court found no private right of action under the Housing and Community Development Act for a nonprofit corporation to sue to stop the City of Poughkeepsie from terminating its contract to provide housing services. The court found that the proper remedy lay in pressing a complaint to the Secretary [of Housing and Urban Development.] *Id.* at 493. The court noted that:

[T]he plain language of the statute itself speaks only of the procedures and remedies which the Secretary may pursue. Although these prescriptions do not necessarily preclude private rights of action, the court may presume, in the absence of any evidence to the contrary, that Congress did to some degree consider the enforcement of terms and conditions of the Act, and obviously felt that the administrative agency should have the major, if not exclusive, responsibility for insuring compliance.... When legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies. 'When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode.'

*Id.* at 491 (citing *Botany Mills v. United States*, 278 U.S. 282, 289, 49 S.Ct. 129, 132, 73 L.Ed. 379 (1929)). Similarly, in *Accion Social de Puerto Rico, Inc., v. Perez*, 831 F.2d 365 (1st Cir.1987), the U.S. Court of Appeals for the First Circuit found that a nonprofit organization that claimed it had been denied a hearing prior to termination of its CSBG funding needed to lodge a complaint with [the Secretary of Health and Human Services], and only after "final action" by [the Secretary] could "the parties ... seek judicial review." *Id.* at 372. "Any appeals from [the Secretary's] rulings must be taken in accordance with the law governing judicial review of administrative action." *Perez*, 831 F.2d at 372. Here, there is no statement by Plaintiffs that they have even attempted to comply with the terms of § 9915 by pressing their complaints to the Secretary and then litigating any denial of funding through the Administrative Procedure Act. However, whether Plaintiffs did so or not, this Court cannot create for them an additional remedy under § 1983 where the agency, at least, has a clear remedy under § 9915.

Applying *Sandoval* to § 9915, this Court finds that § 9915 speaks only to the "Secretary," who "upon request," will review a decision to terminate the funding of an eligible entity. 42 U.S.C. § 9915(b). This means that the agency would address any request to the Secretary for a review of any decision calling for the termination of funding. The Secretary is then "authorized to provide financial assistance under this chapter to the eligible entity affected until the violation is corrected," and subsequently reduce the grant to the State by the amount given to the entity denied funding by the State. 42 U.S.C. § 9915(c).

Thus, § 9915 only speaks to the actions a State should take when an eligible entity fails to comply with the terms of the CSBG program. When a State fails to follow these "assurances," the Secretary [of the U.S. Department of Health and Human Services] may provide financial assistance to the eligible entity affected until the violation is corrected and may subsequently reduce the grant to the State by an amount equal to the funds provided to the eligible entity. Because there is no clear intent by Congress in § 9915 to provide privately enforceable rights, except to the extent that eligible entities may ask the Secretary to *review* a funding termination, the agency Plaintiff's claims under § 1983 for damages must be dismissed as well.

In conclusion, the Court therefore finds that § 9915 in no way clearly states or implies that recipients of the CSBG program are granted any clear right to enforce the statute. Nor does it clearly state or imply that individual employees of eligible entities have a right to enforce the provisions of the statute. While the question of an agency's right to enforcement is closer, Congress in this instance provided a mechanism in the statute to provide for review of State decisions—a request to the Secretary—and a remedy, funding directly

from the federal government in the event of an invalid funding termination by a State. Thus, this Court will not imply a private remedy where Congress has created none. All of Plaintiffs' claims based upon a private right of action pursuant to § 9915 must therefore be dismissed.

### E. Fourteenth Amendment As a Basis for Plaintiffs' Claims

■ Plaintiffs appear to further allege that the lack of a hearing prior to termination of funding, as well as the subsequent denial of funding as a result of the hearing that was held by Defendants, violates the Fourteenth Amendment's Due Process clause. The Fourteenth Amendment provides that no state may "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1, cl. 3. Plaintiffs appear to claim that grant recipients, Plaintiffs Diggs, Hill, and Clinard, had a property right in the grant itself, and Plaintiffs Jones and Hayes had a property right in their jobs at GCCAP. Plaintiffs, however, never specify what property right GCCAP had that would entitle it to assert a Fourteenth Amendment claim. However, in addressing this issue, the Court must first determine whether any of the Plaintiffs possessed a property right recognized under the Fourteenth Amendment.

In order to establish a § 1983 claim for violation of procedural due process rights, a plaintiff must show that he possesses a protected property interest. *Beck v. City of Durham*, 129 F.Supp.2d 844, 850 (M.D.N.C.2000). Property rights are not created by the Constitution, but by "an independent source such as state law." *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Property interests are protected where an individual has a "legitimate claim of entitlement to it." *Id.; Beck*, 129

F.Supp.2d at 850. Procedural due process is thus required before an individual can be "finally deprived of a property interest." *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976); *Burlington United Methodist Family Servs. v. Atkins,* 227 F.Supp.2d 593, 597 (S.D.W.Va.2002). The only law Plaintiffs have offered as providing those rights is the CSBG statute itself, and in particular, § 9915.

In the present case, and as the Court has previously noted, § 9915 provides no "rights" under the statute to individuals, particularly not to the intended recipients of grants such as Plaintiffs Diggs, Hill, and Clinard. Section 9915 speaks only to the relationship between the State and the agency. Furthermore, § 9915 does not ever mention the ability of intended recipients to participate in termination hearings or the administrative proceedings prior to a termination hearing. As previously discussed, intended recipients of grant money as dispersed by GCCAP have no private rights under § 9915 to receive grant money from that particular agency or to enforce the federal statute. Thus, this Court finds no property interest for intended recipients, such as Plaintiffs Diggs, Hill, and Clinard, in § 9915 that would serve as the basis for a Fourteenth Amendment claim.

Similarly, as previously determined, § 9915 provides no rights to the employees of agencies that distribute those grants for the State. Plaintiffs Jones and Hayes were not employees of the NCDHHS. They were employees of an independent nonprofit agency that received grant money from the federal government through the NCDHHS. Plaintiffs have not alleged that Defendants took any action, other than termination of the federal grant, that forced Plaintiffs Jones and Hayes to lose their jobs from that agency. Since Plaintiffs Jones and Hayes had no legitimate claim to that grant, it follows that they had no private right or entitlement to the fruits of that grant, such as employment. For these reasons, Plaintiffs Jones and Hayes would also not have any enforceable property rights that support a Fourteenth Amendment claim.

As previously noted, plaintiffs have failed to explain what property right, if any, Plaintiff GCCAP has under the statute. Assuming that it is the property right to receive monies from the State for the space of time before it is funneled to intended recipients, this Court finds that no such property right exists. Under the law of this circuit, to have a property interest in a benefit, "a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Gardner v. Baltimore Mayor & City Council,* 969 F.2d 63, 68 (4th Cir.1992)(quoting *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709). While the State had chosen to funnel funding through GCCAP for at least a decade, that decision as to which agency would have the privilege of doling out funding was discretionary under the statute. Under § 9909, the State needed only to designate an eligible entity that was either a private nonprofit organization that is geographically located in the unserved area, or a private nonprofit organization that is geographically located in reasonable proximity to the unserved area. There was no guarantee that GCCAP would always be the agency chosen by the State to administer the grant money available here. Furthermore, while under § 9908, a State must assure eligible entities that have previously received funding that that funding will not be terminated or reduced, the State may terminate or reduce the funding after providing notice and an opportunity for a hearing, where an eligible entity fails to comply with the

terms of its agreement with the State. Funding may also be reduced to an eligible entity after the State receives new data as to poverty, or if the State designates a new eligible entity, or if there is a severe economic dislocation. 42 U.S.C. § 9908(c). Therefore, funding to any eligible entity is never assured, and no particular agency is absolutely entitled to receive funding under § 9915. Where there is no absolute entitlement, there can be no property right.

Furthermore, as previously discussed, Plaintiff GCCAP had a remedy under § 9915 for any State violations of its due process rights—an appeal to the Secretary. Where Congress has provided such a mechanism, this Court will not imply a private right, thus it cannot be said that GCCAP has a private property right enforceable under the Fourteenth Amendment to the block grant.

Because the Court has found that § 9915 provided no independent right to any of the Plaintiffs, which in turn prevents enforcement under § 1983, none of the Plaintiffs have a cause of action under § 9915, nor a property right that they could enforce pursuant to the Fourteenth Amendment. Having found that no private right exists for any of the Plaintiffs under any theory that has been presented, the Court need not go further in reviewing Defendants' Motion to Dismiss. Therefore, the Court will decline to address the other bases raised by Defendants' Motion to Dismiss, in particular Defendants' claim of immunity under the 11th Amendment, Defendants' claim that Plaintiffs lack standing, and Defendant Burton's request for dismissal of the claim against him for improper service of process.

## IV. CONCLUSION

For the reasons stated herein, Defendants' Motion to Dismiss Plaintiffs' Complaint is GRANTED and Plaintiffs' claims are hereby DISMISSED. An Order and Judgment consistent with this Memorandum Opinion shall be filed contemporaneously herewith.

### ORDER AND JUDGMENT

For the reasons stated in the Memorandum Opinion filed contemporaneously herewith, IT IS HEREBY ORDERED that Defendants' Motion to Dismiss [Doc. # 5] is GRANTED. Accordingly, Plaintiffs' claims against Defendants are hereby DISMISSED with prejudice.