PITTMAN, Judge.
 

 This appeal is taken by the Alabama Department of Economic and Community Affairs (“ADECA”) from a judgment of the Tuscaloosa Circuit Court that purported to reverse alleged decisions of ADECA that terminated the authority of Community Service Programs of West Alabama, Inc. (“CSP”), to distribute federal block grants to low-income energy consumers in
 
 *398
 
 Hale County and limited CSP’s authority to distribute such grants in nearby counties to a reimbursement basis on the stated grounds that (a) CSP had failed to include an elected official on its board from Hale County or a designee of such an official, and (b) CSP had failed to maintain an office in Greensboro, the county seat of and largest city in Hale County.
 

 Pursuant to Alabama statutes, ADECA, as the successor to the former Alabama Office of State Planning and Federal Programs, is afforded authority over.the disbursement of grants and other forms of federal-government assistance intended for the promotion of the health, safety, and general welfare of citizens of the state, and it is empowered to exercise all powers necessary and proper for the discharge of its duties, including promulgating reasonable rules and regulations.
 
 See
 
 Ala.Code 1975, §§ 41-9-207, 41-9-211, and 41-23-1. Among the federal-government assistance programs that fall within ADECA’s regulatory auspices is the federal Low Income Home Energy Assistance Program (“LI-HEAP”), under which the Secretary of Health and Human Services is authorized to make grants to states to assist low-income households in making payments for home-energy consumption.
 
 See
 
 Ala. Admin. Code (ADECA), r. 305-5-2-.01 et seq., and 42 U.S.C. § 8621 et seq. Further, ADECA is required by statute and rule to “coordinate its activities” under LIHEAP “with similar and related programs administered by the federal government,” such as those programs that had previously been administered under the federal Economic Opportunity Act of 1964 (Pub.L. No. 88-452, 78 Stat. 508) before its 1981 repeal. Ala. Admin. Code (ADECA), r. 305-5-2-.05; 42 U.S.C. § 8624(b)(4).
 

 CSP is what is known as a “community action agency”; it serves six west Alabama counties: Bibb, Fayette, Greene, Hale, Lamar, and Tuscaloosa. As the United States Court of Appeals for the Tenth Circuit noted in
 
 Gilmore v. Salt Lake Community Action Program,
 
 710 F.2d 632 (10th Cir.1983), “[t]he concept of the community action agency originated in Title II of the Economic Opportunity Act of 1964.” 710 F.2d at 633. Section 202(a) of that Act (Pub.L. No. 88-452, 78 Stat. 508) defined “community action program” as a program that, among other things, “mobilizes and utilizes resources, public or private, of any urban or rural, or combined urban and rural geographical area ... in an attack on poverty” and “is conducted, administered, or coordinated by a public or private nonprofit agency.” 78 Stat. at 516. Although Congress initially left open the issue of governance of such programs, in 1967 it amended the Economic Opportunity Act of 1964 to require private nonprofit agencies acting as community action agencies — that is, administering community action programs — to have a tripartite “governing board,” consisting of not more than 51 members, of members taken from three classes: local political officials; representatives of the poor in the area served; and officials of business, labor, religious, and other major community-interest groups. Pub.L. No. 90-222, § 211(b), 81 Stat. 672, 693. Specifically, Congress required that “one-third of the members of the board [be] public officials,
 
 including the chief elected official or officials,
 
 or their representatives, unless the number of such officials reasonably available or willing to serve [was] less than one-third of the membership of the board.”
 
 Id.
 
 (emphasis added).
 

 In 1972, Congress amended the provisions of the Economic Opportunity Act pertaining to governance of community action agencies so as to require that one-third of the members of the tripartite board be
 
 elected
 
 public officials and to allow appointed public officials to fulfill the
 
 *399
 
 one-third requirement if an insufficient number of elected officials was available and willing to serve; that amendment dropped the federal requirement that “chief elected officials” either serve or be represented. Pub.L. No. 92-424, § 7, 86 Stat. 688, 690. Later, many provisions of the Economic Opportunity Act were repealed by the Community Services Block Grant (“CSBG”) Act of 1981, Pub.L. No. 97-85, 95 Stat. 357, which shifted the general responsibility for running a number of antipoverty programs from the federal government to the states in the manner explained by the United States District Court for the Middle District of North Carolina in
 
 Guilford County Community Action Program, Inc. v. Wilson,
 
 348 F.Supp.2d 548, 552 (M.D.N.C.2004):
 

 “Subsequently
 
 [ie.,
 
 after enactment of the CSBG Act], funds to reduce poverty were allocated to the States through block grants. The States would then channel the funding to eligible entities, generally non-profit community action agencies, that specialized in poverty reduction. [42 U.S.C. § 9901.] In turn, those agencies provided funding to individuals and to programs designated to reduce poverty.”
 

 Although the CSBG Act, as initially enacted, did not disturb previous Congressional enactments pertaining to the governance of community action agencies, language was added to the CSBG Act in 1994 providing for selection of the board “by the community action agency.” Pub.L. No. 103-252, § 202(c)(5), 108 Stat. 623, 652. Further, the CSBG Act was generally revised in 1998 so as to provide, as it does at the time of this opinion, (a) that the members of the board of a private, nonprofit entity administering community-services block grants “shall be selected by the entity,” but (b) that that board shall be composed so as to assure that one-third of its members are either elected public officials holding office on the date of selection or their representatives (or are appointive public officials or their representatives if there is an insufficient number of available and willing elected public officials). Pub.L. No. 105-285, § 201(a)(2) (now codified at 42 U.S.C. § 9910(a)(2)). For purposes of this opinion, we will hereinafter refer to 42 U.S.C. § 9910(a)(2) as “the federal statute” for clarity.
 

 In 1982, in response to Congress’s enactment of the CSBG Act, the Alabama Legislature enacted Act No. 82^94, Ala. Acts 1982, now codified at Ala.Code 1975, § 11-96-1 et seq., which provided that 95% of all moneys received from the federal government through the CSBG Act “shall be appropriated to community action agencies.” AIa.Code 1975, § 11-96-1. Act No. 82-494 further contained a definition of “community action agency” that included “private nonprofit agenc[ies] ... designated as ... ‘eligible entities]’ ” under the CSBG Act. Ala.Code 1975, § ll-96-3(a). Finally, and most pertinent for the purposes of this case, the Alabama Legislature provided as follows:
 

 “Each community action agency shall administer its programs through a governing board consisting of 15 to 51 members.
 

 “(1) One-third of the members of the board shall be elected or appointed public officials, currently holding office or their representatives.
 
 These members shall be designated or approved by the chief elected local government official or officials of the jurisdiction which they represent.
 

 “(2) At least one-third of the members shall be persons chosen in accordance with democratic selection procedures adequate to assure that they
 
 *400
 
 are representative of the poor in the area served by the agency.
 

 “(3) The other members shall be officials or members of business, industry, labor, religious, welfare, education, housing, or other major groups and interests in the community. Each member of the board selected to represent a specific geographic area within an appointed community must reside in the area represented.
 

 “Procedures for selection of board members shall be submitted to county commissions within the community action agency service area for their review. This procedure may be set out in the bylaws governing the community action agency.”
 

 Ala.Code 1975, § 11 — 96—3(b) (emphasis added). For purposes of this opinion, we will hereinafter refer to § 11 — 96—8(b) as “the state statute” for clarity.
 

 In March 2006, ADECA’s director notified the chairman of CSP’s board that ADECA had received “several complaints concerning the provision of services by [CSP] to Hale County,” including complaints of “inaccessibility of services” and “lack of representation on the Board.” The director of ADECA noted that CSP’s sole office in Hale County at that time was not in Greensboro but in Sawyerville, a location approximately 15 to 20 miles away from Greensboro that, ADECA’s director contended, was “inaccessible for many people because of transportation issues.” ADECA’s director further noted that, at the time, CSP’s tripartite board consisted of a total 15 members and that its 5 public officials consisted of 8 from Tuscaloosa County, 1 from Greene County, and 1 from Lamar County. ADECA’s director suggested that CSP should increase its board membership to 18 people “in order for each County to have a public sector member approved by the local jurisdiction each represents.” In pertinent part, the letter directed that CSP “establish and have operational an office in Greensboro” within 60 days and that CSP’s board “be revised” within 6 months “so as to be in compliance with,” among other things, “state and federal statutes.”
 

 In May 2006, the director of ADECA indicated that because CSP had not responded to ADECA concerning the March 2006 letter, ADECA would initiate a process to select an alternate agency to administer LIHEAP funds in Hale County “in order to ensure that the low-income households in Hale County receive LI-HEAP ... services.” After ADECA received a letter from the chairman of CSP’s board that indicated that a response from CSP had been sent to ADECA but had been overlooked, ADECA’s acting director attended an August 2006 meeting of that board and, in a follow-up letter, again reiterated the importance that CSP open an office in Greensboro and suggested that if Hale County’s probate judge (who serves as the chair of the Hale County Commission ex officio,
 
 see
 
 Ala.Code 1975, § 11-3-1(c)), who was in attendance, were selected to CSP’s board, that “would be a good start to having all six of [CSP’s] counties represented.” CSP apparently failed to act in accordance with that letter, and in November 2006 ADECA’s assistant director notified CSP that if the failure of CSP’s board to have a Hale County member and of CSP to have a Greensboro office were not remedied in 15 days, LI-HEAP funds would be transferred to another Hale County entity. In response, CSP’s executive director submitted a letter later that month in which she requested that ADECA hold an administrative hearing pursuant to its June 13, 2006, guidance letter regarding grievances.
 

 The hearing requested by CSP was originally scheduled for February 2007, but
 
 *401
 
 was it continued at CSP’s request. Before that hearing was held, CSP’s executive director notified ADECA’s director that CSP took the position (a) that Hale County actually was represented on its board because one of its “representative of the poor” members was a Hale County resident; (b) that there was no binding requirement that the chief elected official of Hale County be represented on the board of CSP; and (c) that CSP had conducted “outreach” efforts in Greensboro while maintaining its office in Sawyerville. In November 2007, ADECA’s general counsel notified CSP’s attorney that ADECA intended to designate CSP as a “high-risk” agency
 
 [1]
 
 unless CSP provided evidence that it had opened an office in Greensboro and that it had placed the chair of the Hale County Commission on its board. In response, CSP reiterated its request for an administrative hearing. In subsequent correspondence, CSP’s attorney advanced the contention that the state statute, to the extent that it applied to the composition of a community action agency’s board, was preempted by the provisions of the federal statute mandating that the pertinent entity select its board, and advised that a state senator whose district included part of Hale County had been appointed as one of CSP’s public-official directors.
 

 ADECA appointed a hearing officer to hear the matter, and a hearing was held on June 23, 2008, concerning the preliminary determination by ADECA to terminate CSP’s LIHEAP funding as to Hale County. During and after the hearing, CSP took the position (a) that the state statute was preempted by the federal statute so as to obviate any need to place the chairman of the Hale County Commission or his designee on CSP’s board, (b) that CSP had complied with ADECA’s directives to establish an office in Greensboro, and (c) that the “high-risk” designation was without a valid basis and should be removed.
 

 On September 80, 2008, the hearing officer issued a document entitled “Administrative Factual Findings and Conclusions of Law.” In that document, the hearing officer identified two pertinent issues to be resolved: “CSP[’]s non-compliance with [the state statute] as that statute applies to CSP’s selection [of] its board members and (2) CSP[’]s accessibility within Hale County from an office location in Greensboro, Alabama.” After analyzing the federal statute, the state statute, and regulatory guidance from the United States Department of Health and Human Services regarding tripartite boards, the hearing officer concluded that CSP had “continuously been in non-compliance with” the state statute, which the hearing officer determined not to be preempted. As to the issue of a Greensboro office, the hearing officer noted that CSP had adduced evidence “that it ha[d] leased space in a Greensboro church ... under a written lease[ ] and that it conducted] business at [that] location on Tuesday and Thursday of each week from 9:00 [a.m.] until 2:00 [p.m.],” albeit with a telephone-directory listing that was in- the sole name of the lessor church. However, the hearing officer
 
 did not issue a definitive decision
 
 as to the sufficiency of CSP’s efforts to obtain a Greensboro office in response to ADE-CA’s directives, instead opining that “[w]hether [CSP’s] response is adequate in light of the needs of the Hale County citizens seeking access to these services is not determinable from the record presented by the parties, and
 
 is an administrative oversight decision that must be made
 
 
 *402
 

 by ADECA
 
 after further review of the relevant facts and circumstances” (emphasis added). No ruling was issued on whether ADECA had acted outside its discretion in designating CSP as a “high-risk” agency.
 

 Notwithstanding those omissions, CSP filed a notice of appeal with ADECA’s director and filed an action seeking judicial review in the circuit court, asserting a right to review under Ala.Code 1975, § 41-22-20, a portion of the Alabama Administrative Procedure Act (“AAPA”). In its complaint, CSP challenged the hearing officer’s determination regarding its federal preemption argument and complained that the hearing officer had “failed to address whether or not it was appropriate for ADECA to keep CSP on ‘high-risk,’ and failed to adequately address whether or not CSP’s presence in Hale County was sufficient.” CSP requested, among other things, that the circuit court assume jurisdiction and grant relief to CSP, including directing that the “high-risk” designation be removed and ordering that CSP’s administration of the LIHEAP program be restored. Perhaps in recognition of the questionable finality of the decision as to which it had sought review, CSP’s subsequent memorandum of issues presented cited Ala.Code 1975, § 41-22-20®, for the proposition that the “failure of an agency to submit a final decision in writing does not prevent an aggrieved party from seeking judicial review.” On April 2, 2009, the circuit court entered a judgment in which that court purported to hold that the state statute
 
 was
 
 preempted by the federal statute, that ADECA had no authority to discontinue LIHEAP funding as to Hale County, and that ADECA had acted outside its discretion in deeming CSP to be “high risk.” From that judgment, ADE-CA appealed to this court.
 

 The substantive issues presented by the parties in their excellent appellate briefs are by no means unimportant or insubstantial, as the procedural history we have set forth might indicate. However, we regret that we are not in a position to address those issues. Rather, our review of the record convinces us that the appeal is due to be dismissed,
 
 ex mero motu,
 
 because the circuit court never acquired subject-matter jurisdiction.
 
 See Singleton v. Graham,
 
 716 So.2d 224, 225-26 (Ala.Civ. App.1998) (noting that a circuit court’s lack of subject-matter jurisdiction follows an appeal to this court and warrants dismissal upon discovery of the jurisdictional defect in the record on appeal);
 
 see also Eitzen v. Medical Licensure Comm’n of Alabama,
 
 709 So.2d 1239, 1240 (Ala.Civ.App.1998) (dismissing appeal from circuit court’s judgment affirming final decision of administrative agency because record revealed that the circuit court’s jurisdiction to review the decision had not properly attached).
 

 Section 41-22-20(a), Ala.Code 1975, a portion of the AAPA, provides that a person who has exhausted all administrative remedies available within a state agency “and who is aggrieved by a
 
 final decision
 
 in a contested case” is entitled to judicial review under the AAPA (emphasis added). “A ‘final decision’ is one that garners the support of ‘a majority of the officials who are to render the final order.’ ”
 
 Ex parte Worley,
 
 46 So.3d 916, 922 (Ala.2009) (quoting § 41-22-15, Ala.Code 1975, a portion of the AAPA). Here, although the AAPA provides for the rendition of a “final order in a proceeding” within 30 days “[ajfter a recommended order, or findings and conclusions are submitted to the agency and mailed to all parties, if the hearing is conducted by a hearing officer,” Ala.Code 1975, § 41-22-16(a), the record in this case contains no
 
 *403
 
 indication that the director of ADECA or any authorized subordinate official at ADECA acted in any way upon the hearing officer’s “administrative Factual Findings and Conclusions of Law.” That omission is especially notable in light of that document’s silence regarding whether CSP’s “high-risk” classification was proper and that document’s express notation that whether CSP should be deemed in compliance with ADECA’s directive to open an office in Greensboro was “not determinable from the record presented by the parties” and was “an administrative oversight decision that must be made by ADE-CA after further review of the relevant facts and circumstances.” Thus, the hearing officer’s document containing his findings of fact and conclusions of law was not a final order because that document plainly “leaves the exact nature or extent of [CSP’s] liability ‘for a later determination [by ADECA] based on uncertain conditions,’ ” rather than “conclusively adjudicating] all claims and leaving] nothing further to be done.”
 
 IPSCO Steel, Inc. v. Alabama Dep’t of Envtl. Mgmt.,
 
 850 So.2d 344, 347-48 (Aa.Civ.App.2002) (quoting
 
 Ford Motor Co. v. Tunnell,
 
 641 So.2d 1238, 1240 (Aa.1994)).
 

 Thus, attempted appeals from mere preliminary findings will generally not support judicial-review proceedings under the AAPA.
 
 See Gibbons v. State Ethics Comm’n,
 
 827 So.2d 801, 803-04 (Aa.Civ.App.2001). The sole exception is provided for in the second sentence of § 41-22-20(a): a preliminary agency ruling
 
 is
 
 immediately reviewable “if review of the final agency decision would not provide an adequate remedy.” There is no indication in this record or in the parties’ submissions that judicial review of a
 
 final
 
 decision of ADECA would not afford complete relief. Similarly, we note, but reject, CSP’s attempted invocation of § 41-22-20(f) as a basis for the circuit court’s jurisdiction: that statute simply states that agency delay in reaching a final decision “shall be justification for [an aggrieved party] to seek a court order
 
 compelling action by the agency
 
 ” (emphasis added)— a reference to the power of a circuit court to order an agency to issue a final decision rather than any power on the part of that court to hypothecate a final decision on the agency’s behalf.
 

 We conclude that the circuit court was without jurisdiction to enter any judgment on the merits of the petition for judicial review filed by CSP in that court. We therefore dismiss ADECA’s appeal to this court from the circuit court’s judgment and instruct the circuit court to dismiss CSP’s judicial-review action so that a final decision may be rendered by ADECA.
 
 [2]
 
 In doing so, we expressly disclaim any indication of this court’s views regarding the relative substantive merits of the positions assumed by ADECA and CSP during their dispute.
 

 APPEAL DISMISSED WITH INSTRUCTIONS TO THE CIRCUIT COURT.
 

 THOMPSON, P.J., and THOMAS and MOORE, JJ., concur.
 

 BRYAN, J., concurs in the result, without writing.
 

 [1]
 

 . According to a subsequent letter from ADE-CA’s general counsel, the "high-risk” designation "requires that [a grant recipient] submit documentation of expenditures and is then reimbursed rather than receiving advance payments.”
 

 [2]
 

 . We note that ADECA will, in reaching its final decision, have the discretion to consider, among other issues, whether any actions taken by CSP during the pendency of the judicial-review proceedings towards establishing a Greensboro office have rendered that issue moot.
 
 Cf.
 
 Ala.Code 1975, § 41 — 22—20(i) (regarding the power of agencies to modify their findings and decisions by reason of additional evidence).